**DANLY MACHINE CORPORATION,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 73-1073.**

United States Court of Appeals,
Seventh Circuit.

Heard Oct. 19, 1973.

Decided Feb. 15, 1974.

Edward C. Rustigan, Chicago, Ill., for plaintiff-appellant.

Scott P. Crampton, Asst. Atty. Gen., Donald H. Olson, Atty., Tax Division, Dept. of Justice, Washington, D. C., Hon. James R. Thompson, U. S. Atty., Chicago, Ill., for defendant-appellee.

Before KILEY, Senior Circuit Judge, STEVENS, Circuit Judge, and WYZANSKI,* Senior District Judge.

WYZANSKI, Senior District Judge.

The question here presented is whether when on December 23, 1968, by regulation, the Secretary of the Treasury allowed each corporate taxpayer which had issued after December 31, 1954 dollar obligations as part of an investment unit consisting of a dollar obligation and an option to purchase stock, thereafter to deduct from gross income annually, but only in years when those obligations remained outstanding, a prorated part of that portion of the amortizable bond discount which could have been, but was not, claimed before the adoption of the regulation, the Secretary abused his statutory authority by his failure to permit a comparable deduction to plaintiff taxpayer and other corporations which had issued similar obligations, but which at the time the regulation was adopted no longer had outstanding such obligations.

That foregoing question arises in this action brought by plaintiff to recover an alleged overpayment of its federal corporate income tax for its taxable year ended June 30, 1965. Jurisdiction of the case rests upon 28 U.S.C. § 1291. The essential facts may be briefly stated.

In its fiscal year 1956 plaintiff, for a consideration of one million dollars issued as an investment unit $1,000,000 of its debentures, payable in installments from 1956 through 1970, together with options to acquire, at predetermined prices, 30,000 shares of its common stock.

In fiscal 1966 plaintiff retired the last of its debentures.

In its returns for the years 1956 through 1966 plaintiff claimed no deduction for amortizable debenture discount.

In September 1967 plaintiff filed a claim for partial refund of its income taxes paid for its fiscal year 1965. As modified, the claim sought to deduct as an interest cost under § 163 of the Internal Revenue Code of 1954 the proportionate part of the original issue discount which it could have claimed, but did not claim, in all of the years of 1956 through 1965.

* Senior District Judge Charles Edward Wyzanski, Jr., of the District of Massachusetts, is sitting by designation.

The Commissioner partially allowed the modified claim to permit a deduction from 1965 gross income of the proportionate part of the original issue discount attributable to that year, but the Commissioner disallowed the proportionate parts of the original discount attributable to earlier years. The reason for the Commissioner's disallowance was that the tax returns for those years were no longer open, and there was no applicable regulation giving to those in plaintiff's position benefits calculated "retroactively" to "catch up" on lost opportunities for taking deductions for amortization.

The taxpayer seeks judicial reversal of the Commissioner's disallowance. It points to the Secretary of the Treasury's December 23, 1968 regulation numbered Section 1.163–3, and entitled "Deduction for discount on bonds issued on or before May 27, 1969," and reading as follows:

§ 1.163–3 *Deduction for discount on bonds issued on or before May 27, 1969.*

(a) *Discount upon issuance.*

(1) If bonds are issued by a corporation at a discount, the net amount of such discount is deductible and should be prorated or amortized over the life of the bonds. For purposes of this section, the amortizable bond discount equals the excess of the amount payable at maturity (or, in the case of a callable bond, at the earlier call date) over the issue price of the bond (as defined in paragraph (b)(2) of § 1.-1232–3).

(2) In the case of a bond issued by a corporation after December 31, 1954, as part of an investment unit consisting of an obligation and an option, the issue price of the bond is determined by allocating the amount received for the investment unit to the individual elements of the unit in the manner set forth in subdivision (ii)(a) of § 1.1232–3(b)(2). Dis-count with respect to bonds issued by a corporation as part of investment units consisting of obligations and options after December 31, 1954, and before December 24, 1968—

(i) Increased by any amount treated as bond premium which has been included in gross income with respect to such bonds prior to December 24, 1968, or

(ii) Decreased by any amount which has been deducted by the issuer as discount attributable to such bonds prior to December 24, 1968, and

(iii) Decreased by any amount which has been deducted by the issuer prior to December 24, 1968, upon the exercise or sale by investors of options issued in investment units with such bonds, should be amortized, starting with the first taxable year ending on or after December 24, 1968, over the remaining life of such bonds.

That regulation affords to corporate taxpayers whose obligations were still outstanding on December 24, 1968, a "retroactive" opportunity to "catch up" on lost opportunities in earlier years to take deductions for amortization, properly prorated. But, as plaintiff notes, it gives no comparable retroactive catch-up bounty to those who, like plaintiff, had redeemed all obligations before the regulation was promulgated.

The Secretary's failure to embrace within the retroactive bounty scheme plaintiff and others *in consimili casu* is alleged by plaintiff to be an abuse of the Secretary's statutory authority under § 7805(b) of the Internal Revenue Code of 1954, which provides that "The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect." Plaintiff, during the argument at our bar, expressly disclaimed any attack based upon Constitutional grounds. The question is only one of al-

leged arbitrary, unfair, unreasonable abuse of a discretionary statutory power.

■ We might initially observe the futility of plaintiff's approach. If, as it claims, the regulation were arbitrary and a misapplication of statutory authority, our only power as judges would be to prohibit the Secretary from applying the regulation: that is, to forbid the Secretary to bestow bountifully a new deduction upon corporate taxpayers which had obligations outstanding on December 24, 1968. We as a court have no power to give, or to direct the Secretary to give, an enlarged bounty to classes of persons not heretofore covered by any regulation.

But even if we leave aside the point made in the preceding paragraph, we are not impressed by plaintiff's argument.

In matters of taxation the selection of subjects of taxation, rates, classes of beneficiaries, and permissible deductions has a large element of arbitrariness. Familiar illustrations are the different rates at which long and short-term capital gains and losses are taxed; or the different rates for net income at above and below a capriciously selected figure; or the different rate for excises on foreign-built and domestically-built yachts. Billings v. United States, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596 (1913).

■ The broad freedom that the legislature has in subjecting to taxation, classes of persons, property, income and other matters is perhaps exceeded by the legislature's freedom, as a matter of grace, to grant deductions or exemptions. Congress may give a deduction to all in a narrowly defined class and deny to those who are objectively distinguishable from the class as limited. Perhaps

the fullest judicial discussion of the relevant principles is in Colgate v. Harvey, 296 U.S. 404, 56 S.Ct. 252, 80 L.Ed. 299 (1935).

■ What, without being thought unreasonable, Congress may do in allowing deductions retroactively calculated, the Secretary may do under the broad powers conferred upon him by § 7805(b) of the Internal Revenue Code of 1954, 26 U.S.C. § 7805(b).

We have not overlooked the decision in Farmers' and Merchants' Bank v. United States, 476 F.2d 406 (4th Cir. 1973). Were we required to do so, we could distinguish the facts there from those here by noting that the Secretary's regulation involved in that bank case obviously drew a line which seems to have been nearly if not quite irrational from any point of principle, policy, or pragmatism. In the regulation in the case at bar it was plainly rational for the Secretary to permit catch-up deductions only to those who had not fully closed their bond or debenture account and who had an ongoing taxable relation to outstanding obligations. However, while the distinction we have mentioned seems to us sound enough, we admit that we would be less than candid if we did not recognize that our approach differs from that of our fellow judges in the Fourth Circuit. We take a more generous view of the discretion allowed to the Secretary of the Treasury; and we are less willing to see an abuse of statutory authority where he exercises the ample powers available to him under § 7805(b) of the Internal Revenue Code of 1954. Automobile Club of Michigan v. The Commissioner of Internal Revenue, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957).

We agree that the District Court correctly dismissed plaintiff's action.

Judgment affirmed.